# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

JORGE EDUARDO ZAMUDIO QUIROGA

     Petitioner,

v.                                    Civil No.:

KAREN VANESSA ROSALES DE LA HOZ

     Respondent.

_____/

## TIME-SENSITIVE VERIFIED PETITION FOR RETURN OF CHILDREN TO COLOMBIA AND REQUEST FOR ISSUANCE OF SHOW CAUSE ORDER

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001, *et seq*.**

## INTRODUCTION

1.    Petitioner, Jorge Eduardo Zamudio Quiroga (the "Father"), by and through his undersigned counsel, files this Verified Petition for Return of the Children to Colombia (hereinafter, the "Petition"), against the Respondent, Karen Vanessa Rosales De La Hoza (the "Mother").

2.     This Petition is filed as a result of the Mother's wrongful retention and wrongful removal to the United States of the parties' sons, J.D.Z.R., born in October 6, 2012, and I.E.Z.R., born in July 27, 2015 (collectively referred to as the "children").

3.     Both children were born in Colombia.

4.     Both children only lived in Colombia.

5.     The children's proper custody and habitual residence is Colombia.

## THE ACTS GIVING RISE TO THIS PETITION

6.     **First**, the Mother removed the children in Mexico beginning on July 20, 2022, under the guise of a preplanned family vacation to Cancun, Mexico.

7.     **Second**, the Mother removed the children from Mexico to the United States on or about July 27, 2022, without the Father's knowledge or consent by crossing the U.S.-Mexican Border without lawful entry authorization..

8.    **Third**, since on or about July 27, 2022, the Mother has illegally retained the children in the United States without disclosing their location to the Father.

9.    Upon the Father's own investigation, the Father has been able to identify where the children are located.

10.    However, the Father is under the belief that the Mother has plans to change their location in the near future.

11.    This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") codified at 22 U.S.C. 9001 *et seq.*

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), text available at:  https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction (last accessed March 23, 2023).

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

12.    The Convention came into force in the United States of America on July 1, 1998, and was ratified between the United States of America and Colombia on June 1, 1996.[2]

13.    The objects of the Convention are as follows: (1) to secure the immediate return of the children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting Stats. Convention, art. 1.

## JURISDICTION

14.    This Court has jurisdiction under ICARA § 9003 because this case involves the wrongful retention and removal of two children under the age of sixteen in the United States from the children's habitual residence of Colombia, and upon information and belief the children are currently located within the jurisdiction of this Court in Osceola County in the Middle District of Florida.

---

[2]    *See* Hague Abduction Convention Country List, text available at: https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html (last accessed March 23, 2023).

4

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

# FACTS

## *The Parties' Background and Relationship*

15.     The parties are citizens and permanent residents of Colombia.

16.     The Father has resided in Colombia for his entire life.

17.     The Mother has resided in Colombia for her entire life.

18.     Neither party has any right to live or work in the United States.

19.     In 2010, the parties were married in Colombia.

20.     J.D.Z.R. was born in Colombia on October 6, 2012.

21.     I.E.Z.R. was born in Colombia on July 27, 2015.

22.     The Father was fully involved in the Mother's pregnancy and was present for each child's birth.

23.     Both parties are named on the children's birth certificates.

24.     By virtue of the parties' nationalities and the country of their births, the children are citizens of Colombia.

25.     The children are registered Colombian passports holders.

26.     The children have lived without interruption in Colombia since each of their births.

27.   The children have never lived in the United States or anywhere else outside of Colombia.

28.   From the time of each child's birth in Colombia, the children have always been and continue (until the Mother's retention and removal) to be fully involved and integrated in all aspects of daily and cultural life in Colombia, including but not limited to the following ways:

   a.  The children were born at a local hospital in Colombia.

   b.  The children have Colombian citizenship.

   c.  The children have their pediatrician, obtains immunizations, and attend medical appointments in Colombia.

   d.  J.D.Z.R. lives in Colombia in the Father's home.

   e.  I.E.Z.R. lives in Colombia in the Mother's home.

   f.  The children attend school at the Gimnasio Campestre Educational Institution in Puerto Colombia - Atlantico ("Gimnasio Campestre Educational Institution"). Since 2019, the children have been enrolled at the Gimnasio Campestre Educational Institution.

g. The children's Father lives and works in and around Barranquilla, Colombia.

h. The children's Mother has the ability to continue to live and work in Colombia.

i. The children have immediate and extended family in Colombia.

j. The children have many friends in Colombia.

k. The children spend time with their family in Colombia.

l. The Father's extended family lives with him and/or near him in Colombia and would visit the children often.

m. The children have a settled routine in Colombia.

29.    In May of 2022, the Father and Mother separated due to the Mother's issues of infidelity in the marriage.

30.    On June 28, 2022, the divorce between the Father and Mother was finalized.

31.    Per the Children's Alimony Agreement between the parties, the expenses of the children are to be shared equally by the Father and the Mother.

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

32.    The Father was given custody of J.D.Z.R. and the Mother was given custody of I.E.Z.R.

33.    However, the parties jointly exercised parental authority over the children.

34.    Further, the parties agreed to jointly share the children on a weekly basis (taking turns one week each parent) beginning on Friday at 3:00 pm and will return on Sunday at 6:00 pm or Monday, if there is a holiday.

35.    The parties both financially supported the children.

36.    The parties both exercised their parental authority and visitation rights.

### The Wrongful Retention and Removal of the Children

37.    On May 5, 2022, the Father authorized a Permit to Travel Overseas[3] for the Mother to take the children on a preplanned trip to Cancun, Mexico to spend time with her family.

---

[3] Per Article 110 of Colombian Legislation on Parental Authority, Custody Rights and Alimony, when a child who has residence in Colombia is going to leave the country with one of the parents, he/she must previously obtain the permission of the person with whom he/she will not travel

8

38.     At the time of the authorization, the Father had no reason to suspect the Mother's intentions, like his, were anything but genuine.

39.     On July 20, 2022, the Mother left Barranquilla, Colombia with the children.

40.     The Mother informed the Father that the Mother and the children were traveling to Cancun, Mexico as planned and authorized.

41.     On July 26, 2022, the Mother was expected to return to Colombia with the children as planned, yet they never returned.

42.     The Father then began investigating and reaching out to the Mother's family, who had all returned from Mexico as planned.

---

or that of those, duly authenticated by a notary or consular authority. Said permit must contain the destination, the purpose of the trip, and the date of departure and entry back into the country. No authorization will be required from parents who have been suspended or deprived of parental authority.                    Text                    available                    at https://www.icbf.gov.co/systeme/files/procesos/pu1.g6.p_colombian_legislation_on_parenta l_authority_custody_rights_and_alimony_v1.pdf#:~:text=arental%20responsibility%20%20is%2 0a%20complement,level%20of%20satisfaction%20of%20their%20rights.&text=arental%20respon sibility%20%20is,satisfaction%20of%20their%20rights.&text=%20is%20a%20complement,level% 20of%20satisfaction%20of (last accessed March 23, 2023).

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

43.     The Father contacted Ninfa De La Hoz, the Mother's mother (the "Grandmother"), who lived in the United States on an overstayed tourist visa.

44.     The Grandmother informed the Father that the Mother, through the assistance of the Grandmother, had organized plans to illegally cross the Mexican border into the United States with the children.

45.     The Father pleaded with the Mother and the Grandmother to not put the lives of the children at risk, but nonetheless, the Mother illegally entered the United States with the children.

46.     Throughout the journey across the border, the Mother and children, traveled through deserts and rivers in an arduous and life-threatening fashion to illegally enter the United States.

47.     On or about July 28, 2022, the Father received a call from the Grandmother, who informed the Father that the Mother and the children had been detained by the United States Border Patrol.

48.    On or about July 30, 2022, the Grandmother received the Mother and the children from the United States Border Patrol, where they then traveled to Orlando, Florida.

49.    On August 1, 2022, the Father was informed by the Mother and the Grandmother that the children had arrived in Orlando, Florida, which would be the children's new residence.

50.    Both the Mother and the Grandmother refused to disclose the location and address of where the children are residing.

51.    Upon information and belief of the Father's own investigation, the children are now residing at the Grandmother's residence located at 2845 Club Cortile Circle, Orlando, Florida 34746.

52.    The Mother unilaterally enrolled the children in school in Orlando, Florida.

53.    Upon information and belief, the children are attending the Flora Ridge Elementary School located at 2900 Dyer Blvd, Kissimmee, Florida 34741.

54.    The children communicate with the Father daily and have expressed several times to the Father that they want to come home to Colombia.

55.    The children have stated that the Mother is rarely presented as the Mother works until midnight each day.

56.    As a result, the children are left in the care of the Grandmother, in which the children have expressed that they are treated poorly by the Grandmother.

57.    Additionally, the children have informed their Father that the Mother has plans to leave the Grandmother's home in the near future and change the children's names.

58.    The Father fears he may lose their location and contact with the children for the unforeseeable future.

59.    The Father has continuously tried to contact the Mother, urging her to return the children to Colombia, but his requests have been ignored.

*Subsequent Actions by the Father*

60.    When the Father learned that the Mother had removed the children to the United States, the Father sought assistance from the Colombian government and subsequently the United States government to bring the children home to Colombia.

61.    On or about August 24, 2022, the Father filed a Complaint to the Prosecutor's Office, Ministry of Justice in Cundinamarca, Colombia, pertaining to the Mother's wrongful removal of the children[4].

62.    On or about September 28, 2022, the Father submitted his Hague Convention Return Application ("Hague Application") to the Central Authority for Colombia, which transmitted the Hague Application to the United States Department of State Office of Children's Issues (the United States Central Authority).

63.    The United States Central Authority located the Mother and children in Kissimmee, Florida. Upon information and belief, it is the Grandmother's home where they are residing.

_____

[4] The Complaint filed with The Colombian Ministry of Justice is available upon request.

64. On or about October 26, 2022, the Father submitted an application to the Hague Convention Attorney Network Assistance, 2022, to request the U.S. Central Authority's assistance in identifying representation for his Hague Convention Case in the United States.

65. The United States Central Authority then assisted the Father with locating *pro bono* or reduced-fee representation to represent him in federal court in Florida.

66. Until the retention in Mexico and removal to the United States, the children lived their entire life in Colombia.

67. From the totality of the circumstance's perspective, Colombia is the children's habitual residence.

68. The parties never had a shared intent for the children to reside anywhere other than Colombia.

69. The parties' only shared, settled intent with respect to the children's habitual residence has been that the children will reside in Colombia.

70.    At the time of the Mother's retention and removal of the children, the Father had (and continues to have) rights of custody to the children in Colombia, by operation of Colombian law, as fully set forth below[5].

71.    The Mother's retention in and removal of the children to the United States breaches the Father's rights of custody under Colombian law.

72.    The Mother has repeatedly refused to return the children home to Colombia.

73.    The Father has never consented to the children living anywhere other than Colombia.

74.    The Father did not and does not consent to the children being retained in the United States from Colombia, or living in the United States temporarily, permanently, or indefinitely.

---

[5] Republic of Colombia Attorney Agreement Liquidation of Conjugal Partnership ("Divorce") is available upon request.

75.     The Father has not acquiesced in the Mother's removal or retention of the children from Colombia.

76.     Upon information and belief, the Mother and children entered the United States illegally and have no legal immigration status in the United States.

77.     The Father has now been able to find and retain reduced-fee representation in seeking the return of the children to Colombia through a Petition for Return in this Court.

## COUNT I - WRONGFUL RETENTION OR REMOVAL

78.     The Father restates and realleges the averments contained in Paragraphs 1 through 77 as if fully set forth herein.

79.     The Convention applies to cases in which a child under the age of sixteen (16) years has been removed or retained from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

80.     The children in this case are under the age of sixteen.

81.    The habitual residence of the children is Colombia.

82.    The children have resided in Colombia for all of their lives by agreement of the parties. At the time the Mother first retained the children in Mexico and then removed the children to the United States, the children had only lived in Colombia.

83.    The parties never agreed for the children to live outside of Colombia indefinitely, and never agreed for the children to travel to or live in the United States.

84.    The children are fully involved in all aspects of daily family life and cultural life in Colombia. Based on the facts of the family's history, the parties' shared intent for the children to live in Colombia, the children's perspective of home as Colombia, the children's routine and settled life in Colombia, and the totality of the circumstances, the children's habitual residence is Colombia.

85.    Notice is given in this pleading that the Father is relying upon foreign law. FED.R.CIV.P. 44.1.

86.    At the time the Mother retained the children in Mexico and then removed the children to the United States, the Father had - and continues to have - rights of custody to the children under the Children's Alimony Agreement signed by the parties per their divorce.

87.    Per Article 288 of Colombian Legislation on Parental Authority, Custody Rights and Alimony, parental authority is defined as the set of rights that the law recognizes for parents regarding their non-emancipated children[6], to facilitate compliance with their duties that their role imposes on them.

88.    Together, the parents are responsible for exercising parental authority over their children.

89.    In Colombia, parental responsibility is a complement to parental authority established in civil law.[7]

---

[6] Non-emancipated children are children of the family, and the father or mother in relation to them, father or mother. *See* Colombian Legislation on Parental Authority, Custody Rights, and Alimony, Art. 288.

[7] *See* Colombian Legislation on Parental Authority, Custody Rights, and Alimony, Art. 14.

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

90.    Per Article 14 of Colombian Legislation on Parental Authority, Custody Rights and Alimony, parental responsibility is the obligation inherent to the guidance, care, accompaniment and upbringing of children and adolescents during their raising process.

91.    This includes the share and joint responsibility of the father and mother to ensure that children and adolescents can achieve the highest level of satisfaction of their rights.

92.    Parental authority and responsibility under the Colombian Legislation on Parental Authority, Custody Rights, and Alimony involve the "care of the child" and is recognized as a right of custody under Article 5*a* of the Hague Convention.[8]

93.    The Father is the biological father of the children, is named on the children's birth certificates, and the parties were married at the time of each child's birth.

94.    The Father and the Mother finalized their divorce approximately one month before the Mother's retention and removal.

---

[8] *See, e.g., Hanley v. Roy*, 485 F.3d 641, 647-48 (11th Cir. 2007).

19

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

95.    The Father has sole custody of J.D.Z.R. but the Father has joint parental authority and parental responsibility and visitation regarding both children per the Children's Alimony Agreement and Colombian Legislation on Parental Authority, Custody Rights, and Alimony.

96.    Joint parental responsibility is a "right of custody" under Article 5*a* of the Hague Convention.

97.    The Father has these rights by operation of law even without any orders being entered related to the children by any Colombian courts, and he had these rights at the time the Mother retained the children in Mexico and removed the children to the United States.

98.    At the time of the Mother's retention of the children in Mexico and then removal to the United States, the Father was actually exercising - or would have been actually exercising but for the Mother's retention and removal - his custody rights, within the meaning of Articles 3 and 5*a* of the Convention, having custody of J.D.Z.R., by caring for the children, fully participating in the children's lives, and undertaking all parenting responsibilities since each child was born.

99.    The Mother's retention and removal of the children to the United States from Colombia is therefore wrongful under the Hague Convention because the Mother has (1) removed the children to and retained them in the United States; (2) from the children's habitual residence of Colombia; (3) in breach of the Father's rights of custody to the children under Colombian law; and which (4) the Father was exercising at the time of the retention and removal (or would have been exercising but for the Mother's wrongful retention and removal).

100.    The Father has never acquiesced or consented to the Mother's retention or removal of the children to the United States from Colombia.

101.    The Father has timely taken all legal steps available to him first to seek an amicable solution in accordance with Article 7 of the Hague Convention, and now to seek the return of the children to Colombia in accordance with the Hague Convention.

102.    The children are currently physically located within the Middle District of Florida in Orange County.

## COUNT II - ARTICLE 18 RETURN

103.   The Father restates and realleges the averments contained in Paragraphs 1 through 102 as if fully set forth herein.

104.   The Father invokes Article 18 of the Convention, which grants this Court plenary power to order the children's return at any time.[9]

105.   In accordance with the Article 18 equitable return factors set forth in Justice Alito's concurring opinion in *Lozano v. Montoya Alvarez*, the Father requests that this Court exercise its equitable discretion to return the children to Colombia under Article 18 even if the Mother establishes one of the Convention's five narrow discretionary exceptions to return under the Convention.[10]

106.   The children here have an interest and desire in returning to Colombia, their country of citizenship and habitual residence.

---

[9] *See* Convention, art. 18; *see also* 51 Fed. Reg. 10,949, 10,509 (1988) (legal analysis of the Hague Convention by the U.S. Department of State); *Lozano v. Alvarez*, 134 S.Ct. 1224, 1237 (2014) (Alito, J., concurring); *In re B. Del C. S. B.*, 559 F.3d 999, 1015-16 (9th Cir. 2009); *Alcala v. Hernandez*, 826 F. 3d 161 (4th Cir. 2016).

[10] *See Lozano*, 134 S. Ct. at 1237 (Alito, J., concurring) (listing factors that weigh in favor of returning a child to the country of habitual residence even when a narrow discretionary exception to return is established).

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

107.    The children have close ties with Colombia; in particular, they have close ties to: (a) the Father; (b) their friends; (c) their extended family; (d) their activities; (e) their medical care; (f) their school; and (g) their Colombian culture.

108.    The children have a strong need for regular daily contact with the Father, who was exercising rights of custody at the time the children were removed to the United States and who was jointly sharing caretaking responsibility for the children. The Mother has now restricted all meaningful in-person contact between the children and the Father.

109.    The Father has an interest in exercising his Colombian rights of custody in Colombia, which he was doing at the time the Mother retained the children in Mexico and then removed the children to the United States.

110.    The governments of Colombia and the United States both have an interest in discouraging inequitable conduct and deterring international child abductions.

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

## PROVISIONAL AND EMERGENCY REMEDIES[11]

111.   The Father requests expedited relief consistent with the Hague Convention and the Court's administrative policies in such a manner as to minimize any burden or disruption on the Court and the United States Marshal Service, while at the same time ensuring this Court is seised with jurisdiction over this Hague Convention matter and the children.

112.   Along with the filing of this Petition, the Father files a Request to expedite Proceedings Pursuant to Hague Convention Law.

113.   The Father requests that this Court issue a Show Cause Order forthwith[12] as set forth below due to the Mother's substantial flight risk, the expedited nature of this child abduction case, and pursuant to the Hague Convention, the mandate of the United States Supreme Court, the implement statute and relevant Eleventh Circuit authority.

---

[11] This Court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." ICARA § 9004.

[12] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention. *See Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1343 (S.D. Fla. 2002).

114.   The Father requests that the Show Cause Order: i) direct the Father's counsel to serve by private process this Court's Show Cause Order and all other pleadings and papers filed in this case on the Mother; and ii) set an expedited Show Cause Hearing for the Mother to appear, with the children (or have the children remotely available), and for the Father's counsel to appear on his behalf, on the first available date on the Court's calendar to confirm the children's location and to schedule the expedited evidentiary hearing and all other filing deadlines.

115.   The Father further requests that this Court's Show Cause Order include provisions: i) prohibiting the removal of the children from the jurisdiction of this Court during the pendency of these proceedings; ii) ordering that the Mother forthwith deliver all of the children's passports and other travel documents to either the Clerk of this Court or to the

Father's counsel's office[13] to be held in escrow during the pendency of the proceedings.[14]

116.    The Mother has demonstrated that she is a substantial flight risk, having abducted her children first in Mexico and then illegally to the United States from their home in Colombia, putting the children at substantial risk of harm.

117.    Upon information and belief, the Mother is organizing to remove the children outside of Florida to a different sister-state outside of this Court's jurisdiction.

118.    Unless this Court takes immediate action to issue the Show Cause Order requested by the Father, irreparable harm will occur to the well-being of the children in that they will be deprived of their Father, their home, and their life in Colombia.

---

[13] The Father's counsel, Robert Eckard & Associates, P.A. is located at 3110 Palm Harbor Blvd, Palm Harbor, Florida 34683.

[14] A Petition may also be treated as an application for a Writ of Habeas Corpus itself. *Zajaczkowski v. Zajaczkowska, 932 F. Supp. 128, 132 (D.Md. 1996)* ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus . . . pursuant to 28 U.S.C.A. § 2243").

119.   Pursuant to ICARA § 9004, in a proceeding for the return of the child, "[n]o court exercising jurisdiction . . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of state law are satisfied" ICARA § 9004. In this case, the law referred to is that of Florida.

120.  In Florida, the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter, "UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as Fla. Stat. § 61.501 *et seq*.

121.   Florida law addresses the appearance of the parties and the child in such cases in § 61.523 of the UCCJEA.

122.   That section authorizes this Court to order the appearance of the child and custodian or custodians *together*. *Id*. This Court, therefore, has the authority to issue a show cause order, ordering the appearance of the Mother and children together in that the provisions of 22 U.S.C.  9004 can be met.

123.   The Court may of course fashion any other remedy to establish that the children are within the jurisdiction in keeping with the expedited nature of these proceedings.

124.   Upon information and belief, the Father may be unable to travel to the United States for the final evidentiary hearing in this case due travel restrictions.

125.   The Father will therefore separately file in this Court if required a Motion for Testimony by Contemporaneous Transmission, seeking permission of this Court for the Father to testify by contemporaneous transmission at the evidentiary hearing.

126.   In accordance with the Hague Convention Articles 2 and 11, ICARA, 28 U.S.C. 1657, and the requirement of the Supreme Court of the United States that courts use the most expeditious procedures available,[15] and the good and meritorious cause to expedite consideration of the Father's Petition, the Father respectfully requests that this Court enter a

---

[15] The Convention prescribes "six weeks as normal time for return-order decisions." *See Monasky v. Taglieri*, 140 S.Ct. 719, 724 (2020).

Show Cause Order forthwith in the form submitted to this Court, setting an expedited date for a status/scheduling hearing, on the first date available on the Court's calendar, and thereafter allowing for full resolution of this matter within six weeks of the date of filing this Petition.

## UCCJEA DECLARATION

127.   The details regarding the minor children that are required to be provided under the UCCJEA are as follows:

    a. Upon information and belief, the children have been physically located at the following address, with the Mother, from on or about August 1, 2022 to present as a result of the Mother's wrongful removal and retention of the children at: 2845 Club Cortile Circle, Orlando, Florida 34746.

    b. From July 20, 2022, until August 1, 2022, as a result of the Mother's wrongful retention of the children in Mexico and removal to the United States, the Father did not know the location of the children as across the Mexico-United States border.

c.  For the five years preceding this Petition until July 20, 2022, (as a result of the Mother's retention and removal), the children resided at: Calle 11 #10d-117, Puerto Colombia, Atlántico, 081001, Colombia with the Mother and/or Calle 11 #10d-45, Puerto Colombia, Atlántico, 081001, Colombia with the Father.

## NOTICE OF HEARING

128.  Pursuant to ICARA § 9003(c), the Mother will be given notice of any hearings in accordance with Florida's UCCJEA.[16]

## ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

129.  The Father has incurred significant expenses as a result of the wrongful retention and removal of the children by the Mother.

130.  The Father will submit, in accordance with the Federal Rules of Civil Procedure and the Middle District's local rules, a copy of all

---

[16] The Convention itself does not specify any specific notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. ICARA § 9003(c).

attorneys' fees, expenditures and costs, according to proof, incurred as a result of the Mother's wrongful retention and removal.

131.    The Father respectfully requests that this Court award all reasonable expenses and attorneys' fees and costs incurred to date as required by ICARA § 9007, reserving jurisdiction over further expenses.

## RELIEF REQUESTED

**WHEREFORE,** Petitioner, Jorge Eduardo Zamudio Quiroga, respectfully requests the following relief:

A. That this Court issue an Order directing the prompt return of the children to their habitual residence of Colombia in accordance with Petitioner's rights of custody under Colombian law and Articles 3, 5a, and 18 of the Convention; and

B. That this Court issue a Show Cause Order forthwith in the form submitted by the undersigned counsel, (attached Exhibit A), directing the Petitioner's counsel to serve by private process this Court's Show Cause Order and all other pleadings and papers filed in this case on the Respondent; and

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

C. That the Court's Show Cause Order set an expedited status/scheduling hearing for the Petitioner's counsel and the Mother to appear, with the children (in person or remotely), on the first available date on the Court's calendar to confirm to location of the children and to schedule the final evidentiary hearing and all other filing deadlines; and

D. That the Court's initial order include provisions: i) prohibiting the removal of the children from the jurisdiction of this Court during pendency of the proceedings in this Court; and ii) ordering that the Respondent forthwith deliver all of the children's passport and other travel documents to either the Clerk of this Court or to the Petitioner's counsel's office, to be held in escrow during the pendency of the proceedings; and

E. That this Court permit the Petitioner to appear and testify by contemporaneous transmission at the expedited evidentiary hearing; and

JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301

F.  That this Court order daily electronic video and telephone access for the Petitioner with the children during the pendency of these proceedings; and

G.  That this Court order in-person contact for the Petitioner with the children if the Petitioner is able to travel to Florida during the pendency of these proceedings; and

H.  That if the Respondent removes the children or cause the children to be removed from the jurisdiction of this Court, that this Court issue an Order directing that the name of the children be entered into the national police computer system (N.C.I.C.) missing persons section, and that an arrest warrant be issued for the Respondent; and

I.  That this Court issue an Order directing the Respondent to pay the Petitioner's reasonable and necessary expenses, including but not limited to attorneys' fees, suit money, expenses and costs; and

J.  That this Court grant any such further relief as justice and the

Petitioner's cause may require.

## VERIFICATION

PURSUANT TO 28 U.S.C.A. § 1746, I, JORGE EDUARDO ZAMUDIO
QUIROGA, DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF
PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT I HAVE
REVIEWED A SPANISH TRANSLATION OF THE FACTUAL AVERMENTS OF THIS
VERIFIED PETITION FOR RETURN OF CHILDREN TO COLOMBIA (¶¶6-77 ABOVE)
AND THEY ARE TRUE AND CORRECT.

EXECUTED ON MARCH _31_, 2023.

Jorge Eduardo Zamudio Quiroga,
*Petitioner.*

Respectfully submitted on this _31_ day of March, 2023.

/s/ Robert D. Eckard
**ROBERT D. ECKARD, B.C.S.**
Florida Bar No.: 0162655
LEAD TRIAL COUNSEL
**ROBERT ECKARD & ASSOCIATES, P.A.**
3110 Palm Harbor Blvd.
Palm Harbor, Florida 34683
(727) 772-1941 Telephone
(727) 771-7940 Facsimile
E-Mail: Robert@RobertEckardLaw.com
*Counsel for Petitioner*

34
JORGE EDUARDO ZAMUDIO QUIROGA v KAREN VANESSA ROSALES DE LA HOZ
Case Number:
(MD FL TPA)

File Number 8331-2301